IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KAROLINA TWAROWSKI,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No. SAG-20-00815 |
| | * | |
| **HEART'S DESIRE DCL, LLC,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case arises out of the rental, by the Twarowski family and their guests, of a large vacation property in the area of Deep Creek Lake, Maryland ("the Premises"). During their stay, a wooden deck railing collapsed, causing the individual plaintiffs to fall and sustain serious injury. This lawsuit ensued. On June 10, 2021, Plaintiffs filed an Amended Complaint naming certain new Defendants including Frederick Mutual Insurance Company ("FMIC") and Mueller Services, Inc. ("Mueller"). ECF 101. On June 29, 2021, some of the originally named Defendants, Taylor-Made Deep Creek Vacation & Sales, LLC ("Taylor-Made"), Chad Taylor, Joe Refosco, and Jodi-Taylor Refosco (collectively "the Taylor-Made Defendants") filed a Second Amended Cross-Claim, also adding Mueller as a cross-claim defendant. ECF 118. FMIC and Mueller have now filed motions to dismiss the various claims against them. ECF 121 (FMIC's Motion to Dismiss); ECF 130 (Mueller's Motion to Dismiss Amended Complaint); ECF 131 (Mueller's Motion to Dismiss Cross-Claim) (collectively "the Motions"). I have considered the Motions, the memoranda and exhibits filed in support, and the oppositions and replies thereto. ECF 121, 130,

131, 133, 135, 139, 140, 141, 142.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons set forth herein, the Motions will be granted.[1]

## I. BACKGROUND

The following facts are derived from the Amended Complaint and Second Amended Cross-Claim, and are taken as true for the purposes of adjudicating these motions.

The Premises is owned by Defendant Heart's Desire DCL, LLC ("Heart's Desire").  ECF 101 ¶ 4, 20.  Heart's Desire hired Taylor-Made as its property manager.  *Id.* ¶ 12, 21.  Taylor-Made entered into a Rental Agreement with Plaintiff Agnieszka Twarowski for a weekend rental of the Premises.  *Id.* ¶ 35.  The other Plaintiffs were invitees at the Premises during Twarowski's stay.  *Id.* ¶ 45.  On May 26, 2018, the day after Plaintiffs' arrival, "the previously negligently repaired section of the guardrail system for the outdoor deck broke, collapsed or gave way with light, ordinary and foreseeable application of pressure," allegedly resulting in serious personal injuries to three Plaintiffs.  *Id.* ¶ 45.  The Amended Complaint alleges that the guardrail was broken between April 14 and April 16, 2016 and improperly repaired.  *Id.* ¶¶ 29-30.

The Amended Complaint further alleges that on April 21, 2016, FMIC and Mueller (collectively referred to as "the Inspection Defendants") "inspected the Premises and negligently failed to identify the negligent and improper repair recently made to the guardrail system and misrepresented the condition of the guardrail system."  *Id.* ¶ 33.  Specifically, it states, "On or about April 21, 2016, New-Party Defendant Frederick Mutual by and through its agent New-Party Defendant Mueller Services, inspected the Premises, including the deck, but negligently failed to discover or identify the negligent and improper guardrail repair, failed to notify or alert anyone of

---

[1] There is also a pending motion for summary judgment in this case, filed by several individual Defendants.  ECF 115.  That motion will be addressed in a separate opinion.

it, and failed to require that it be correctly and immediately fixed." *Id.* ¶ 49. The Amended Complaint further alleges that:

> The Inspection Defendants were negligent and breached statutory, contractual and/or common law duties owed to Plaintiffs by, among other things:
>
> a. Failing to inspect the Premises to identify hazards;
>
> b. Failing to conduct a proper inspection of the Premises and of the deck and guardrail system;
>
> c. Failing to exercise reasonable care in the inspection of the Premises and of the deck and guardrail system;
>
> d. Failing to properly train, instruct and supervise their employees and/or agents in the proper and reasonable inspection of the Premises and of the deck and guardrail system;
>
> e. Violating or failing to comply with applicable industry standards and practices relating to the inspection of the Premise and of the deck and guardrail system; and/or
>
> f. Otherwise failing to act in a reasonably careful and prudent manner to avoid foreseeable harm to others.

*Id.* ¶ 61.

The Inspection Report, prepared by Mueller, is attached to Mueller's opposition to the Motion to Dismiss.[2] It specifically states that the "report's sole purpose is to provide insurance underwriting information. While information contained herein is based upon observation and

---

[2] While, ordinarily, consideration of documents outside the pleadings would require this Court to convert the motion to a motion for summary judgment, Mueller's inspection report regarding the Premises is expressly referenced and relied upon in the First Amended Complaint. Thus, although it is not actually material to the disposition of these Motions, the report may be considered without triggering such conversion. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) for the proposition that the Court can consider a "document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity."). Plaintiffs have not challenged the report's authenticity. This Court declines to consider the affidavit also attached to Mueller's Motion, which would require conversion to summary judgment.

reasonable judgment, no representation or guarantee of accuracy or completeness is made. Use of any part of this report is voluntary and Mueller shall not be held liable for any loss or damage resulting therefrom." ECF 130-2.

Turning to the pending claims, the Amended Complaint is not a model of clarity as to which claims are asserted against "the Inspection Defendants." Counts One through Three, which are negligence claims brought by particular individual Plaintiffs, appear to be asserted against all Defendants. ECF 101 at 12, 19, 22. Similarly, Count Four (Consumer Protection) and Count Eight (Strict Liability) do not specifically allege claims against only the "Management Defendants" and "Owner Defendants," and thus will be read to suggest claims against all Defendants, including FMIC and Mueller. *Id.* at 24, 30.

In their Second Amended Cross-Claim, the Taylor-Made Defendants allege that they are entitled to contribution from Mueller (and other Cross-Defendants) as joint tortfeasors. ECF 118 at 2.

## II.   LEGAL STANDARDS

A 12(b)(6) motion constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint or counterclaim fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (explaining that a court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff"). To survive a motion to dismiss, the factual allegations of a counterclaim, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The counter plaintiff's obligation is to show the "'grounds' of his 'entitle[ment] to relief,'" offering "more than labels and conclusions." *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). It is not sufficient that

the well-pleaded facts suggest "the mere possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

## III.   DISCUSSION

### a.  Negligence

The well-established elements of a negligence claim under Maryland law require that a plaintiff prove that the defendant owed a duty to protect the plaintiff from injury, that the defendant breached the duty, that there was a causal relationship between the breach and harm suffered by the plaintiff, and that damages resulted. *Warr v. JMGM Group, LLC*, 433 Md. 170, 181 (2013). As pled, however, Plaintiffs' Amended Complaint does not articulate any duty owed to Plaintiffs by either FMIC or Mueller. There are no allegations in the Amended Complaint regarding the reason for the inspection those entities conducted or regarding the recipients, if any, of the results. There are certainly no allegations that Plaintiffs learned of the FMIC/Mueller inspection prior to their rental of the property, or that they could have relied on the contents of the report in any way. Plaintiffs' general, conclusory assertion of a "statutory, contractual and/or common law duty and responsibility to inspect the Premises to identify any hazards and to repair, remove, warn of, and correct such hazards", ECF 101 ¶ 51, does not suffice under *Twombly*, because it contains no actual facts establishing the duty on which a plausible claim could rest.

Because the Amended Complaint is essentially devoid of facts that might establish a duty, dismissal is appropriate. Although this Court therefore does not reach the legal issue directly, it notes that Maryland law does not impose liability for negligence on an insurance company, even

one conducting an inspection or having the right to conduct an inspection, where there is no duty owed by the insurance company to the injured party. *Zamecki v. Hartford Acc. & Indem. Co.*, 202 Md. 54, 60 (1953) ("We must conclude from the allegations of the declaration here that this is an attempt to hold an insurance company, which issued a liability insurance policy to a third party who is not alleged to have any connection with the case, as a principal for damages regardless of the amount of that policy. We find no authority to sustain such an action."). Even had the FMIC/Mueller inspection revealed guardrail damage (which the report indicates it did not), mere knowledge of such damage would not create a general duty to the public to protect it from harm. "[T]he fact that a result may be foreseeable does not itself impose a duty in negligence terms. This principle is apparent in the acceptance by most jurisdictions and by this Court of the general rule that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Warr*, 433 Md. at 183 (quoting *Remsburg v. Montgomery*, 376 Md. 568, 583 (2003)). In fact, *Warr* expressly rejected the notion of a duty "to the general public" that would arise from simple foreseeability of harm, using the example of a bar owner who provides alcohol to an intoxicated patron knowing that he may later leave the establishment and cause injury to another. *Id.* at 183-84. Similarly, an insurance company or inspector who becomes aware of a dangerous condition on a property that could foreseeably cause harm to someone does not automatically undertake a general duty to protect all public safety.

Plaintiffs' Opposition essentially amounts to an argument for a policy that insurers who conduct or order inspections should be held liable to anyone later injured at the property they

inspected.[3]  FMIC presents its own policy argument about the increased cost of insurance that would surely ensue were insurers charged with performing full safety inspections and personally warranting the safety of all property they insure.  It is not the role of this Court to make pronouncements of policy.  There is simply no legal authority to support Plaintiffs' recommended policy, which, as noted above, contravenes longstanding Maryland negligence law in the insurance context.  Because Plaintiffs have not plausibly alleged that either FMIC or Mueller owes them a legal duty, their negligence-based claims in Counts One, Two, and Three must be dismissed.

### b.  Maryland Consumer Protection Act

The Maryland Consumer Protection Act cited in Count Four governs trade practices with respect to consumer transactions in the state.  However, the allegations in the Amended Complaint, even taken as true, do not establish that FMIC or Mueller engaged in any trade practices vis-à-vis Plaintiffs.  They did not sell or offer or rent the Premises to Plaintiffs.  In fact, they did not direct any trade practices towards Plaintiffs, or engage in any business transaction with Plaintiffs, at all.  By Plaintiffs' own acknowledgement, they did not learn of the Mueller inspection report until discovery in this case.  ECF 140 at 2.  Thus, no statements attributable to FMIC or Mueller could have had the effect of deceiving or misleading Plaintiffs as consumers.

---

[3] In their opposition, Plaintiffs suggest that the Mueller inspection was conducted for insurance purposes and that FMIC was the insurer of the property. ECF 133 at 3.  Those allegations, while consistent with the language on the inspection report, are not even contained within the Amended Complaint.  *See Mylan Laboratories, Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).  Even had they been included, however, the Amended Complaint would not state a plausible duty to Plaintiffs in light of the Maryland negligence law described above.

Plaintiffs attempt to argue that the provisions governing "a landlord's consumer protection duty" apply to their claims against FMIC and Mueller. ECF 133 at 14. No factual allegations in their Amended Complaint, however, suggest that either FMIC or Mueller acted as a landlord in connection with the Premises. Accordingly, Count Four must also be dismissed as to these defendants.

### c. Strict Liability

Plaintiffs argue that the condition of the guardrail at the Premises constituted an unreasonably dangerous condition, such that it fell within Maryland's doctrine of strict liability. ECF 101 ¶¶ 111-13; ECF 133 at 15-17. Regardless of the ultimate merits of that contention, neither FMIC nor Mueller could be found liable under that theory, because they do not own or occupy the Premises. Maryland has expressly "declined to extend the abnormally dangerous doctrine to situations in which the alleged tortfeasor was not the owner or occupier of land." *Rosenblatt v. Exxon Co., USA*, 335 Md. 58, 71 (1994). Count Eight, therefore, also must be dismissed as to FMIC and Mueller.

### d. Mueller's Motion to Dismiss the Taylor-Made Defendants' Second Amended Cross-Claim

For the same reasons stated above, the Second Amended Cross-Claim against Mueller is subject to dismissal. Plaintiffs have not alleged a viable negligence theory against Mueller, and the Second Amended Cross-Claim does not expand upon the allegations in Plaintiffs' Amended Complaint to include any additional facts suggesting negligent conduct by Mueller. The Second Amended Cross-Claim simply alleges the existence of a joint tortfeasor relationship, which is not properly alleged without facts supporting a plausible negligence claim. *See Gables Constr., Inc. v. Red Coats, Inc.*, 468 Md. 632, 671 (2020) ("For a statutory claim of contribution under the

UCATA [Uniform Contribution Among Tortfeasors Act], parties must be joint tortfeasors.") (emphasis added).

Similarly, Cross-Plaintiffs have not alleged a plausible claim for contractual indemnification, because Mueller is not a party to the property management agreement between Taylor-Made and Heart's Desire. Even assuming that Taylor-Made has the right to indemnification from Heart's Desire and FMIC is Heart's Desire's insurer, the contractual duty to indemnify Taylor-Made rests with FMIC, not Mueller. Cross-Plaintiffs attempt to rely on facts not pled in the Second Amended Cross-Claim relating to a contractual relationship between FMIC and Mueller. ECF 139 at 3, 7. However, they plead no facts to plausibly suggest how a contract between FMIC and Mueller could result in contractual obligations owed by Mueller to Cross-Plaintiffs. Accordingly, the contractual indemnification cross-claim against Mueller will also be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, FMIC's Motion to Dismiss, ECF 121, and Mueller's two Motions to Dismiss, ECF 130 and 131, will be GRANTED. All claims are dismissed without prejudice. A separate Order follows.

Dated: August 23, 2021                                /s/
                                         Stephanie A. Gallagher
                                         United States District Judge