IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KAROLINA TWAROWSKI**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-20-00815 |
| **HEART'S DESIRE DCL, LLC**, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This case arises out of the rental, by the Twarowski family and their guests, of a large vacation property in the area of Deep Creek Lake, Maryland ("the Premises"). On May 26, 2018, a wooden deck railing at the Premises collapsed, causing three Plaintiffs to fall and sustain serious injuries. Plaintiffs filed a lawsuit naming various defendants, including the corporate owner of the Premises, Heart's Desire DCL, LLC ("Heart's Desire"), its parent entity, C&H DCL Holdings, LLC ("C&H"), and the four individual members of C&H, Joseph A. Cinderella, Florence E. Cinderella, Steven E. Hearne, and Kathleen A. Hearne (collectively, for purposes of this Motion, "the Individual Defendants").[1]  Currently pending is a motion for summary judgment ("the Motion") filed by the Individual Defendants, seeking judgment in their favor on the claims brought by Plaintiffs and the cross-claims brought by Cross-Plaintiffs Taylor-Made, Chad Taylor, Joe Refosco and Jodi Taylor Refosco (collectively, "Cross-Plaintiffs"). I have considered the Motion,

---

[1] Plaintiffs named other individuals as defendants in this lawsuit, particularly those associated with one of the other corporate defendants, Taylor & Refosco, LLC d/b/a Taylor-Made Deep Creek Vacation & Sales, LLC ("Taylor-Made"). Those individuals, Chad Taylor, Joe Refosco, and Jodi Taylor Refosco, are Cross-Plaintiffs with respect to this Motion and are not considered "Individual Defendants" as defined herein.

the memoranda and exhibits filed in support, and the oppositions and replies thereto.  ECF  115, 126, 127, 134.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons set forth herein, the Motion will be granted.

I.     BACKGROUND

The following facts are construed in the light most favorable to the non-moving parties. On October 1, 2001, Joseph Cinderella and Steven Hearne entered into an Operating Agreement to create Heart's Desire for the purposes of acquiring the Premises.  ECF 115-4 at 23; ECF 115-6; ECF 126-1 at 22.  The Operating Agreement lists Joseph Cinderella and Steven Hearne as the Managing Members of Heart's Desire, and lists C&H as the 100% owner of Heart's Desire.  ECF 115-6 at 6-7.  Steven Hearne and his wife Kathleen own 50% of C&H and Joseph Cinderella and his wife Florence own the other 50%.  ECF 126-1 at 27.

On October 14, 2011, Heart's Desire hired Taylor-Made to be its property manager.  ECF 115-8.  The "2012 Exclusive Property Management Agreement" ("PMA") is a fill-in-the-blank form provided by Taylor-Made to property owners.  *Id.*  In this instance, the blank portions of the PMA form were filled out in handwriting by Steven Hearne, who listed himself as "Owner 1" and Joseph Cinderella as "Owner 2."  *Id.* at 1.  In its standard text, the PMA states that "Owner is the fee simple owner of the following house, condominium unit, duplex, townhouse, and/or other residential dwelling unit[.]"  *Id.*  Hearne signed the agreement above the line for "Owner Signature." *Id.* at 5.

Steven Hearne believed that Heart's Desire was not directly responsible for maintenance or inspection of the Premises based on its management agreement with Taylor-Made.  ECF 115-4 at 45-46.  He was unaware of any inspections of the deck or its railing system prior to May 2018. *Id.* at 67-68.  He personally had not taken any steps to examine or inspect the deck or its railings

prior to May 2018. *Id.* He is unaware of how to inspect a deck or deck guardrail system and is not aware of building code requirements. *Id.* at 68-69.

Taylor-Made conducts a once-yearly maintenance inspection of the properties it manages. ECF 115-9 at 36. The inspection includes making sure that the deck and its railings are tight and secure. *Id.* at 36-37. On April 18, 2016, Taylor-Made informed Steven Hearne and Joseph Cinderella that tenants had damaged various items at the Premises, including the "deck bannister." ECF 115-12. Taylor-Made arranged for James Daniels to fix the deck railing at the Premises on that occasion. ECF 115-9 at 39. Daniels recalls that the railing was safe and secure when completed. *Id.*

In their Second Amended Crossclaim, the Taylor-Made Defendants/Cross-Plaintiffs allege that they are entitled to contribution from the Individual Defendants (along with other Cross-Defendants) as joint tortfeasors and that they are entitled to contractual indemnification from the Individual Defendants. ECF 118 at 2-4.

## II.   LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a

scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349.

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

#### A. Claims Brought by Plaintiffs

The uncontroverted evidence shows that legal title to the Premises is held by the LLC, Heart's Desire. ECF 115-3 (Real Property Data Search). All parties agree that Maryland law permits an LLC to own real property and protects the members of the LLC from direct liability. *See* Md. Code Ann., Corps. & Ass'ns §§ 4A-301-303(a) (providing that "real property . . . may be acquired by a limited liability company" and that no member of that LLC "shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company."). The parties

4

further agree that "corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body." *Tedrow v. Deskin*, 265 Md. 546, 550 (1972).  Thus, the success of Plaintiffs' claims depends on their ability to prove that the Individual Defendants personally committed or participated in tortious acts.

There is simply no such evidence before this Court.  While the evidence reflects that the Individual Defendants made occasional use of the Premises themselves, there is no evidence of anything occurring during those stays to cause damage to the deck railings.  Moreover, there is no evidence that any of the Individual Defendants learned of anything during those stays, or at any other time, to cause them to know or suspect that the deck railings were damaged at the time of Plaintiffs' stay in 2018.  Finally, there is no factual basis suggesting that the Individual Defendants had an ongoing duty to inspect or maintain the Premises.  The PMA, instead, places those duties squarely on Taylor-Made, with costs to be borne by Heart's Desire. ECF 115-8.

The law cited by Plaintiffs also does not support their position.  First, *Rowley v. Baltimore*, 305 Md. 456, 464-65 (1986), establishes that both a possessor and an owner of property can be liable for personal injury in certain circumstances.  Here, however, the Individual Defendants were neither the owner (which was Heart's Desire) nor the possessors of the Premises at any times relevant to this incident.  Plaintiffs also attempt to rely on a Garrett County ordinance that requires owners and operators of rental properties to comply with a "minimum livability code."  ECF 126 at 9-11.  The Plaintiffs concede, however, that the ordinance "confines the class of those who must register to title owners," which would be Heart's Desire, not the Individual Defendants.  *Id.* at 9. Plaintiffs provide no precedential or other legal support for their policy argument that Garrett County's ordinances are "completely thwarted simply by creating a limited liability company to

be the titled owner." *Id.* at 10. In fact, the ownership structure employed by Heart's Desire and the Individual Defendants is permissible under Maryland law, and any contrary policy must be enacted by the Maryland legislature. In the absence of a factual or legal basis to pierce the corporate veil in this case, judgment in favor of the Individual Defendants against Plaintiffs is warranted.

### B. Claims Brought by Cross-Plaintiffs

Similar deficiencies exist in the Second Amended Cross-Claim against the Individual Defendants. The Second Amended Cross-Claim does not expand upon the allegations in Plaintiffs' Amended Complaint to include any additional facts suggesting tortious conduct by any of the Individual Defendants. Instead, the Second Amended Cross-Claim simply alleges the existence of a joint tortfeasor relationship, which cannot lie without facts supporting a plausible negligence claim. *See Gables Constr., Inc. v. Red Coats, Inc.*, 468 Md. 632, 671 (2020) ("For a statutory claim of contribution under the UCATA [Uniform Contribution Among Tortfeasors Act], parties must be joint tortfeasors.") (emphasis added).

Cross-Plaintiffs suggest that the PMA gives the Owner some responsibility for maintenance and repair of the Premises. ECF 127 at 5-9. First, those duties would run to Heart's Desire as the Owner, not to the Individual Defendants. Second, however, the plain language of the PMA establishes that the Owner's responsibility is to pay the costs of maintenance and repair, and to approve expenditures exceeding $200 when Taylor-Made did not need on an emergency basis to "restore the property to a fit condition for occupancy by guest." ECF 115-8. Failure to approve required maintenance, replacement, or repair costs results in default of the PMA. *Id.* Thus, it is clear from the PMA's plain language that it is Taylor-Made, not the Owner, bearing the responsibility to maintain the Premises and to procure Owner approval for certain higher-dollar

repairs.  *See* ECF 115-8 at 2-3; *see also* ECF 115-9 at 228 (Refosco testimony that it was Taylor-Made's responsibility to keep the Premises safe and free of hazardous conditions).  There is no evidence to suggest that the Individual Defendants denied approval for any repairs suggested by Taylor-Made or otherwise hindered any of its efforts to keep the deck railings in safe condition.  Moreover, despite Cross-Plaintiffs' conclusory assertions that the Individual Defendants did their own "maintenance and inspections," ECF 127 at 8, the evidence is decidedly to the contrary.  *See, e.g.*, ECF 134-2 at 67-69 (Hearne testimony that he and his wife did not do anything to examine or inspect the deck or guardrails and had no knowledge of building code requirements); ECF 115-21 at 45-46 (Cinderella testimony that he has no knowledge of "any kind of construction issues" and did not inspect the Premises or hire any inspectors).  The fact that a relative was asked to replace some deck floorboards on a certain occasion is a red herring, since there is no evidence suggesting that the replaced floorboards bore any relationship to Plaintiffs' injuries.  Similarly, Hearne's affirmative answer when asked whether the only times he "would have performed" any inspections "would have been when you were up there with" family was a response to a hypothetical.  ECF 127-2 at 150.  He expressly testified that he performed no inspections.  ECF 115-4 at 67-68.

The situation with respect to Cross-Plaintiffs' claim for contractual indemnification, however, is slightly more complex.  In filling out Taylor-Made's form PMA, Steven Hearne listed himself and Joseph Cinderella on the lines calling for identification of the "owners" and signed his name on the line requiring the "Owner Signature."  ECF 115-8 at 1, 5.  Cross-Plaintiffs argue that Hearne's handwritten insertions cause ambiguity as to the identity of the owner, rendering summary judgment improper.  ECF 127 at 9-10.  This Court disagrees.  The form PMA expressly defines the "Owner" as "the fee simple owner of the following house, condominium unit, duplex,

townhouse, and/or other residential dwelling unit." ECF 115-8 at 1. That language is not susceptible to more than one meaning. The PMA form is clearly designed with individual and not corporate owners in mind, as it, for example, has a line to identify the owner's "spouse." *Id.* However, the fact that a client may improperly fill out the PMA form as a result of its formatting does not render the contract ambiguous. Both by the express definition of "Owner" in the agreement and by the uncontroverted evidence submitted in connection with the Motion, the fee simple owner of the Premises is Heart's Desire. Thus, there is no basis for Taylor-Made to seek contractual indemnification against any of the Individual Defendants, since any obligation rests with the LLC.[2]

## IV. CONCLUSION

For the reasons set forth above, the Individual Defendants' Motion for Judgment, ECF 115, will be GRANTED. Judgment will be entered in favor of Joseph Cinderella, Florence Cinderella, Steven Hearne, and Kathleen Hearne against both Plaintiffs and Cross-Plaintiffs. A separate Order of Judgment follows.

Dated: August 27, 2021   /s/
　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[2] Cross-Plaintiffs cite a series of cases evaluating whether corporate officers had signed documents in their personal or representative capacities, arguing that a similar analysis is required here. ECF 127 at 12-14. The difference, however, is that those cases involved the execution of guaranty documentation, a context in which it is not uncommon for individuals to guarantee payment of corporate obligations. Here, the document in question is a property management agreement for a property owned solely by a corporate entity. It would therefore be illogical to suggest that Dr. Hearne signed that agreement in his individual capacity, since he had no individual authority to retain management for the Premises he did not own.